UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FAY PETERSON,<br>    Plaintiff,<br><br>    v.<br><br>THE CONNECTICUT LIGHT<br>  & POWER COMPANY,<br>    Defendant.* | No. 3:10-cv-02032 (JAM) |

**RULING RE MOTION FOR RECONSIDERATION
OF ORDER DENYING SUMMARY JUDGMENT**

Defendant, The Connecticut Light and Power Company ("CL&P"), moves for reconsideration of this Court's oral ruling of May 14, 2014, denying CL&P's motion for summary judgment. I grant the motion for reconsideration but adhere to my ruling denying summary judgment.

**Background**

Plaintiff is a black woman of Jamaican ancestry. For several years she worked as a cable wire-splicer for CL&P. Her job principally involved work in the field with a group of male co-workers, including with George Escobar who—according to plaintiff's deposition—was the "lead" wire-splicer with her group and who "oversees the job like a supervisor." Doc. # 32-3 at 22. Escobar told plaintiff that she "don't need to be in this job," because "this is not a woman's job, this is a man's job." *Id.* at 26. Other co-workers called plaintiff a "coconut head" and told her to "[g]o back to Jamaica." *Id.* at 27, 52, 56. Plaintiff testified that she complained repeatedly

---

* The Clerk of Court is directed to modify the case caption to reflect the defendant's name used herein.

1

to higher level supervisors about the way she was being treated by her co-workers but that her supervisors ignored or responded ineffectually to her complaints. *Id.* at 27, 57-58.

CL&P suspended plaintiff in August 2009, following an altercation she had with her co-workers when they drove away without her from a job one day and left her lunch and other belongings lying along the side of the street. *Id.* at 29-34, 48-49. When plaintiff told Escobar what had happened, he said, "I would have done worse," and "he walked away with a grin on his face." *Id.* at 35. Within several days and after continued friction with Escobar, CL&P suspended plaintiff from working. *Id.* at 36-45. Plaintiff testified that "the three-week suspension that was given to me was because of the issue with Mr. Escobar on the job." *Id.* at 49.

CL&P claims that plaintiff's suspension was based on reports from her co-workers that plaintiff "was always on the cell phone, wasn't paying attention to the job, didn't participate in tailboards," and "[w]asn't really part of the group effort to get a job done." Doc. # 28 at 17. Plaintiff testified, however, that her co-workers were lying. Doc. # 32-3 at 69-70. She said that she had repeatedly told supervisors about her discriminatory mistreatment by her male co-workers and "that the company knew these things was happening and did nothing about it and then turned around to make it seem as if I am the person who, you know, was having all of these problem[s]." *Id.* at 57. Plaintiff also noted that her recent performance review from April 2009 had concluded that she was "a hard worker who always tries to complete her tasks in a timely manner," that she was "a seasoned cable splicer who knows the steps to get the work done," that she "is always available to work and is always on time," and that she "works as a team member and tries to stay involved with the team." *Id.* at 96-97.

Following her suspension, plaintiff returned to work in September 2009, and on October 15, 2009, she filed a complaint of discrimination with the Connecticut Commission on Human

2

Rights and Opportunities ("CHRO"). *Id.* at 119-21. On December 3, 2009, CL&P filed its response with the CHRO. Several days later, plaintiff was fired after she was allegedly found sleeping on the job (which plaintiff denies). Doc. # 28 at 24-25; Doc. # 32-3 at 70-72.

Plaintiff sued CL&P under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), for discriminatory discharge and for discriminatory retaliation on the basis of plaintiff's filing of her CHRO complaint. On May 14, 2014, I heard oral argument and issued a ruling orally denying CL&P's motion for summary judgment, and CL&P now moves for reconsideration.

## Discussion

CL&P principally contends that the Court's oral ruling improperly shifted the burden of persuasion under *McDonnell Douglas* onto CL&P rather than onto the plaintiff. Doc. # 42 at 2-3, 7 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). But, regardless of *McDonnell Douglas*'s burden-shifting framework, it is axiomatic that a defendant seeking summary judgment bears the burden to show the absence of a genuine fact issue for trial. *See, e.g., Vivienzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (Title VII case noting that "[t]he party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists") (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995)); *see also Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir. 1984) (reversing district court that "improperly shifted the burden to [non-movant plaintiff] to prove the existence of material facts warranting a trial"). Accordingly, the burden was properly placed on CL&P to show the absence of a genuine fact issue, and CL&P's contrary argument reflects a misunderstanding of basic summary judgment law.

CL&P contends that the Court overlooked plaintiff's "improper reliance on legally deficient self-serving testimony." Doc. # 42 at 3; *see also id.* at 8 (faulting the Court for relying on "impermissible self-serving statements"). But, as the Second Circuit has concluded, "[t]o hold … that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits," and "[s]uch a radical change in the courts' role would be inappropriate not just in the discrimination context, but everywhere." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Indeed, as Judge Easterbrook has observed, "[m]ost affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *Wilson v. McRae's Inc.,* 413 F.3d 692, 694 (7th Cir. 2005); *see also St. Pierre v. Dyer*, 208 F.3d 394, 405 (2d Cir. 2000) (noting that "the self-serving nature of a witness's statements goes not to their admissibility but to their weight," and that "[t]he weighing of [plaintiff's] evidence is a matter for the finder of fact at trial; it was not the prerogative of the court on a motion for summary judgment"). CL&P's argument against "self-serving" testimony reflects a misunderstanding of basic summary judgment law.

Nor is CL&P correct that the Court improperly relied upon "conclusory" statements of the plaintiff. To the contrary, plaintiff's sworn deposition testimony recounts multiple discriminatory statements by her co-workers and multiple instances in which she complained to supervisors whom she identified by name. Her specific factual allegations about statements made to her and by her are far from "conclusory" and plainly proper for consideration at the summary judgment stage.

CL&P faults the Court for "fail[ing] to address the 'similarly situated' element of the Plaintiff's discrimination claim." Doc. # 42 at 4. But this is an odd argument to make, as a Title VII plaintiff's showing that she was treated different from similarly-situated colleagues is just one way—an indirect one, at that—to show that she has been the victim of discrimination. *See, e.g., Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (noting that Title VII "plaintiff *may* raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group") (emphasis added); *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 291 (S.D.N.Y. 2008) (noting that "a discriminatory animus may be proven both by direct and by indirect evidence, for example, by showing that similarly-situated male [colleagues] were treated more favorably than plaintiff").

Here, the facts as viewed in the light most favorable to plaintiff amply show a genuine issue that discrimination caused plaintiff's suspension and discharge; there was no need for plaintiff to further show how other employees were treated when she presented direct evidence of discriminatory animus against her that infected her disciplinary process. Defendant's contrary argument reflects a misunderstanding of Title VII discrimination law.

CL&P further argues that "the Plaintiff failed to provide any evidence to suggest that the individuals who allegedly made discriminatory remarks toward her played any role in the decision to suspend her or to terminate her employment." Doc. # 42 at 3 (citing *Sanderson v. New York State Elec. & Gas Corp.*, 13-1603-CV, 2014 WL 1243854 (2d Cir. Mar. 27, 2014)). This is not so. Viewing the facts as I must in the light most favorable to plaintiff, CL&P suspended and then terminated plaintiff in reliance on false accounts about her by co-workers, and CL&P did so despite plaintiff's complaints that these co-workers were discriminating against

her on the basis of her gender, race, and national origin. This case is far removed from one—as in *Sanderson*—where a plaintiff is fired for reasons having nothing to do with the acts of her co-workers.

Defendant further argues that plaintiff may not recover on a "cat's paw" theory of liability, because "[t]he theory applies only to the actions of management; it does not extend to the actions of co-employees." Doc. # 42 at 4 n.2 (citing *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011)). This argument misrepresents *Staub*, as the Court expressly reserved the issue of whether the theory could apply to the conduct of co-employees. *Staub*, 131 S. Ct. at 1194 n.4 ("We express no view as to whether the employer would be liable if a co-worker, rather than a supervisor, committed a discriminatory act that influenced the ultimate employment decision.").

In any event, contrary to CL&P's claim that "the Plaintiff has provided no evidence relative to the identity of her supervisors or their alleged role in the decision-making process," Doc. # 42 at 4 n.2, plaintiff adduced ample evidence of the discriminatory supervisory conduct of George Escobar, who plaintiff testified functioned as a supervisor. Doc. # 32-3 at 22. Indeed, at oral argument, CL&P's counsel conceded that Escobar was a supervisor:

> THE COURT: So, as far as we know, was Escobar at any time kind of a supervisor for the day, as you described it?
>
> MS. HELMKE: I believe he was. I believe the allegation, if I recall, the insubordination allegation was incident to Mr. Escobar.

Transcript of Oral Argument at 16 (May 14, 2014).

Accordingly, even assuming that a "cat's paw" theory does not extend to discriminatory acts by mere co-workers, CL&P has conceded the supervisory status of the primary co-worker who plaintiff contends discriminated against her. A jury issue remains concerning CL&P's use of a disciplinary process that was tainted by discrimination—one that relied on claims of co-

employees (including at least one supervisor) to establish that plaintiff engaged in workplace misconduct, all the while ignoring plaintiff's complaints that these co-employees' claims about her were invidiously infected by racial and gender animus.[1]

Finally, as to plaintiff's retaliation claim, defendant now relies on a Supreme Court decision—*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013)—that it did not cite or rely on before the oral argument of this case. In *Nassar*, the Court ruled that a Title VII retaliation claim requires a plaintiff to show "but-for" causation—that the challenged employment action would not have occurred but for the employee's engagement in conduct protected by Title VII. *Id.* at 2533.

The *Nassar* decision does not warrant a grant of summary judgment in this case. As the Second Circuit has more recently explained, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). And the Second Circuit has further explained that "[t]he determination of whether retaliation was a 'but—for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." *Id.* at 846 n.5. Here, the close temporal connection of plaintiff's termination to her CHRO complaint and CL&P's response to the CHRO—when combined with the discriminatory conduct of CL&P employees whose accounts CL&P relied on to suspend and terminate plaintiff's employment—is sufficient to defeat summary judgment on plaintiff's retaliation claim.

---

[1] The Court need not decide the full scope of "cat's paw" or similar liability theory at this time. In the event of the trial of this matter, the parties will have ample opportunity to raise and argue these issues in light of a fully developed evidentiary record.

The Court has considered fully the remainder of arguments set forth in CL&P's motion for reconsideration and concludes they are without merit. In denying summary judgment, I express no view about the merits of plaintiff's claims or the likelihood that they will succeed if tested at trial. Title VII plaintiffs often face near-Sisyphean odds of prevailing. *See, e.g.,* Katie R. Eyer, *That's Not Discrimination: American Beliefs and the Limits of Anti-Discrimination Law*, 96 MINN. L. REV.1275, 1282-85 (2012). Still, when I initially read the papers in this case and heard oral argument, my immediate sense—in light of the strict standards that foreclose me from usurping the jury's role—was that this was one of the easier cases for denying summary judgment that has come my way. CL&P's motion for reconsideration has done naught but confirm this view.

The Court GRANTS the motion for reconsideration and after reconsideration adheres to its ruling DENYING defendant's motion for summary judgment.

It is so ordered.

Dated at Bridgeport this 12th day of June 2014.

/s/
Jeffrey Alker Meyer
United States District Judge